IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY J. PROSSER, and JOHN P. RAYNOR,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>FEDERAL AGRICULTURAL MORTGAGE CORPORATION, UNITED STATES DEPARTMENT OF AGRICULTURE, and NATIONAL RURAL UTILITIES COOPERATIVE FINANCE CORPORATION,<br><br>　　　　　　　Defendants. | Case No. 08-cv-00687-JR |

**DEFENDANT FEDERAL AGRICULTURAL MORTGAGE CORPORATION'S MOTION TO DISMISS AND JOINDER IN MOTION TO DISMISS OF DEFENDANT NATIONAL RURAL UTILITIES COOPERATIVE FINANCIAL CORPORATION**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Federal Agricultural Mortgage Corporation ("Farmer Mac") moves this Court to dismiss the complaint and joins in the separate motion to dismiss filed by Defendant National Rural Utilities Cooperative Finance Corporation.

For the reasons set forth in the Memorandum of Points and Authorities filed concurrently, Farmer Mac respectfully requests the Court dismiss the complaint.

Dated:    May 30, 2008                 Respectfully submitted,

          Washington, DC


                                       /s/ Adam P. Strochak
                                       Adam P. Strochak (D.C. Bar # 439308)
                                       Alexander O. Levine (D.C. Bar # 501924)
                                       WEIL, GOTSHAL & MANGES LLP
                                       1300 Eye Street, NW
                                       Suite 900
                                       Washington, DC 20005
                                       (202) 682-7000

                                       Anthony J. Albanese
                                       WEIL, GOTSHAL & MANGES LLP
                                       767 Fifth Avenue
                                       New York, New York 10153
                                       Tel: (212) 310-8000
                                       Fax (212) 310-8007

                                       Counsel for Defendant Federal Agricultural
                                       Mortgage Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JEFFREY J. PROSSER, and JOHN P. RAYNOR,<br><br>          Plaintiffs,<br><br>   v.<br><br>FEDERAL AGRICULTURAL MORTGAGE CORPORATION, UNITED STATES DEPARTMENT OF AGRICULTURE, and NATIONAL RURAL UTILITIES COOPERATIVE FINANCE CORPORATION,<br><br>          Defendants. | Case No. 08-cv-00687-JR |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT FEDERAL AGRICULTURAL MORTGAGE CORPORATION'S MOTION TO DISMISS**

WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW
Suite 900
Washington, DC 20005
(202) 682-7000

and

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Counsel for Defendant Federal Agricultural
Mortgage Corporation

PRELIMINARY STATEMENT

Defendant Federal Agricultural Mortgage Corporation ("Farmer Mac")
moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and
12(b)(6). This lawsuit is the latest installment in Plaintiffs' long-running – and to date
entirely unsuccessful – effort to blame Defendant National Rural Utilities Cooperative
Finance Corporation ("National Rural") for losses the Plaintiffs apparently suffered on
investments in the telecommunications industry. The complaint is long on conspiracy
theories and spurious accusations but fails to plead any justiciable claim. For the reasons
set forth in National Rural's separate motion to dismiss, filed on May 12, 2008, Plaintiffs
Jeffrey J. Prosser and John P. Raynor allege no facts that would confer standing to invoke
the jurisdiction of this Court and likewise allege no claim on which relief could be granted
even if they did have standing.[1] Farmer Mac joins in National Rural's motion to dismiss
and incorporates herein by reference all arguments asserted by National Rural in its motion
to dismiss.

The allegations against Farmer Mac are even more attenuated than those
against National Rural. The inclusion of Farmer Mac as a defendant in this lawsuit appears
to be nothing more than a tactical ploy to strike at National Rural and disrupt its finances by
suing a major purchaser of its notes and securities. The complaint appears to allege that
Farmer Mac is "complicit" in National Rural's alleged "security fraud," "contributed to
false reliance" on National Rural by unnamed "public investors," and exceeded its own

---

[1]By stipulation, Farmer Mac's deadline for response to the complaint was extended to May
30, 2008. On that date, the court granted National Rural's motion to dismiss, which sought
dismissal of the complaint with prejudice as to all Defendants. It thus appears that the case
has been dismissed in its entirety. As a precaution, Farmer Mac is filing its separate motion
to dismiss in accordance with the response deadline previously agreed upon.

regulatory authority by purchasing National Rural securities and notes.  Complaint ¶¶ 75-77.  These allegations are false.  Even if the Court assumes they are true, the complaint should be dismissed because Plaintiffs do not have standing to sue Farmer Mac and do not allege any cause of action against Farmer Mac on which this Court can grant relief.  Accordingly, Farmer Mac also moves separately to dismiss the complaint.

The complaint should be dismissed as to Farmer Mac because Plaintiffs have not alleged facts sufficient to confer standing under Article III of the United States Constitution.  Plaintiffs allege no cognizable injury to themselves, much less an injury traceable to Farmer Mac's conduct.  Furthermore, their request for a declaratory judgment and "mandatory injunction" against Farmer Mac would not redress any injury they purport to have suffered.  And, even if Plaintiffs did satisfy the requirements for Article III standing, principles of prudential standing require dismissal because the personal interests that Plaintiffs seek to vindicate are far afield from the interests protected by the statutes they purport to rely upon.

The complaint also should be dismissed because it alleges no cause of action on which relief may be granted against Farmer Mac.  Farmer Mac's investments in National Rural securities and notes were approved by the Farm Credit Administration ("FCA"), the federal regulator responsible for oversight of Farmer Mac, in accordance with duly promulgated rules under which the FCA may approve investments by Farmer Mac that do not otherwise meet regulatory eligibility criteria.  Complaint ¶ 79; *see* 12 C.F.R. § 652.35(e) (2008) (stating that "[Farmer Mac] may also purchase non-program investments other than those listed in the Non-Program Investment Eligibility Criteria Table at paragraph (a) of this section only with [the FCA's] written prior approval.").  No federal law creates a private

cause of action permitting Plaintiffs to challenge Farmer Mac's investment decisions or the FCA's approval of those investments.

Furthermore, the Food, Conservation and Energy Act of 2008 (the "Farm Bill"), enacted into law on May 22, 2008, expressly authorizes Farmer Mac to acquire loans of rural electric and telephone utility cooperatives, guarantee securities backed by or representing interests in such loans, and purchase such securities as part of its regular program operations without any special authorization by the FCA.[2] There simply is no basis for any claim by Plaintiffs that Farmer Mac's investment in National Rural securities is unlawful.

Finally, while the complaint recklessly mentions securities fraud and embezzlement, it does not allege any of the requisite elements of either claim. But even if the Court were to construe the complaint as asserting a claim of aiding and abetting federal securities fraud, or criminal embezzlement, it still must be dismissed as to Farmer Mac because no such causes of action exist. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (holding no private right of action for aiding and abetting federal securities fraud); *Fed. Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137 (4th Cir. 1987) (holding that criminal embezzlement statute, 18 U.S.C. § 657, provides no basis for implying a civil cause of action).

## BACKGROUND

Farmer Mac is a stockholder-owned, federally chartered corporation. Complaint ¶ 4. Farmer Mac was created by Congress in 1988 to establish a secondary

---

[2] Pub. L. No. 110-234, § 5406(a)(3), 122 Stat. 923 (May 22, 2008). For the Court's convenience, a copy of the relevant section of the Farm Bill is attached as Exhibit A to this motion.

market for agricultural real estate and rural housing mortgage loans and to increase the

availability of long-term credit at stable interest rates to American farmers, ranchers and

rural homeowners.  *Id.* at ¶ 9.  Farmer Mac generally purchases two types of investments.

"Program" investments are agricultural mortgage loans, guaranteed portions of loans

guaranteed by the United States Department of Agriculture under the Consolidated Farm

and Rural Development Act, and rural utilities loans.  Federal Agricultural Mortgage Corp.,

Annual Report (Form 10-K), at 5 (March 17, 2008).[3] These loans are either securitized and

resold to investors or retained by Farmer Mac.  *Id.*  To finance its purchases of program

investments and its operating expenses, Farmer Mac itself issues debt securities and may

invest some of the proceeds of those issuances in "non-program" investments.  A list of

eligible non-program investments is set forth at 12 C.F.R. § 652.35.  Farmer Mac may make

non-program investments that do not meet these eligibility requirements if the FCA

approves such investments in advance and in writing.  12 C.F.R. § 652.35(e) (2008).

   The complaint alleges that, since 2005, Farmer Mac purchased

approximately $1.34 billion in corporate notes and mortgage-backed securities issued by

National Rural.  Complaint ¶ 79.  These were non-program, "mission-related" investments

that Farmer Mac made as part of its ongoing commitment to help finance rural America.

Federal Agricultural Mortgage Corp., Annual Report (Form 10-K), at 39 (March 17, 2008).

Beginning in July 2005, Farmer Mac entered into a series of transactions with National

Rural to purchase investment securities backed by pools of loans to member-owned rural

utility cooperatives and loans to rural utilities guaranteed by the USDA.  The complaint

itself avers that these purchases were approved by the FCA's Office of Secondary Market

---

[3] Plaintiffs reference and cite to Farmer Mac's Form 10-K in the Complaint and the Court
may therefore consider it on a motion to dismiss.  *See* fn 4, below.

Oversight, as authorized under federal regulations.  Complaint ¶ 79; *see* 12 C.F.R.

§ 652.35(e) (2008).  The FCA did in fact approve Farmer Mac's purchases of National

Rural securities and notes pursuant to this authority.[4]

**ARGUMENT**

**I.      Plaintiffs Lack Article III Standing**

          A plaintiff must have standing under Article III of the United States

Constitution to bring a federal cause of action.  *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560 (1992).  The party invoking federal jurisdiction bears the burden of establishing it.

*Id*. at 561.  To demonstrate standing, a plaintiff needs to prove three elements: 1) that he has

personally suffered a concrete and particularized, and actual or imminent injury to a legally

protected interest, 2) that his legally cognizable injuries are fairly traceable to the allegedly

unlawful action that he is challenging and 3) that it is likely, as opposed to speculative, that

his injuries will be redressed by a favorable judicial decision.  *Id*. at 560-61.  Plaintiffs have

failed to plead or establish any of these three elements.  Accordingly, their Complaint

should be dismissed.

     **A.      Plaintiffs Have Not Suffered an Injury in Fact**

          To show an injury in fact, a plaintiff must establish an invasion of a legally

protected interest which is (a) concrete and particularized and (b) actual or imminent, not

"conjectural" or "hypothetical."  *Id*. at 561.  A concrete injury must be direct, real, and

palpable; it cannot be abstract.  *Public Citizen, Inc. v. National Highway Traffic Safety*

---

[4] Farmer Mac's request and FCA's approvals are attached as Exhibit B.  The Court may
consider these documents on a motion to dismiss because they are referred to in the
Complaint.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 496-99 (5th Cir.
2000) (court may consider exhibits attached to defendant's motion which are referred to in
the plaintiff's complaint and are central to the plaintiff's claim).

*Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007).  Plaintiffs vaguely allege that they "have

suffered harm to their business interests and reputations linked to their discovery of

[National Rural's] illegality and cozening."  Complaint ¶ 103.  Plaintiffs also contend that

Farmer Mac has made unlawful investments in National Rural, allowing its allegedly

"corrupt and incompetent management" to stay in place, and that Farmer Mac has

"knowledge" of a purported subsidization scheme by National Rural.  Complaint ¶¶ 72, 105,

106.  But Plaintiffs do not allege that they own any interest in either National Rural or

Farmer Mac or their securities and do not allege that they borrowed any money from either

National Rural or Farmer Mac or from any lender who sold a loan to National Rural or

Farmer Mac.  Indeed, Plaintiffs do not even allege they have ever done business directly

with either National Rural or Farmer Mac; they assert only that one or more companies in

which they once held a "beneficial interest" or once served as officers or directors, did

business with National Rural.[5]  The abstract and attenuated injuries they allege are

insufficient to establish Article III standing for any claim against Farmer Mac.

> An injury in fact must also be particularized, meaning it must be personal,

individual, distinct, and differentiated – not generalized or undifferentiated.  *Pub. Citizen*,

489 F.3d at 1292.  Plaintiffs appear to allege that Farmer Mac violated FCA regulations by

purchasing National Rural securities and notes.  But the Supreme Court has held that an

asserted right to have the government act in accordance with the law is not sufficient to

---

[5] To the extent Plaintiffs allege that companies with which they are no longer affiliated –
Innovative Communication Corporation and Virgin Islands Telephone Corporation – are
suffering continuing harms, this injury is insufficient to establish standing.  *See Warth v.
Seldin*, 422 U.S. 490, 499 (1975) (finding that plaintiffs must assert their own legal rights
and interests and cannot rest their claim to relief on the legal rights and interests of third
parties).

confer Article III standing. *Allen v. Wright*, 468 U.S. 737, 778 (1984). Plaintiffs'

generalized grievance against Farmer Mac's alleged regulatory violation is not sufficiently

particularized to establish an injury in fact.

Finally, an injury in fact must be actual or imminent – meaning impending

and immediate – not remote, speculative, conjectural, or hypothetical. *Pub. Citizen*, 489

F.3d at 1293. Plaintiffs have alleged vaguely that they will continue to suffer "additional

irreparable harm as long as management of [National Rural] is retained because of the

Farmer Mac and USDA unlawful funding." Complaint at ¶ 110. Plaintiffs do not allege

any supporting facts or offer any explanation to establish how this additional harm would

occur. Plaintiffs, who are no longer affiliated with their former companies, have no

connection to any of the named defendants, and they never had any connection to Farmer

Mac. As to Farmer Mac, Plaintiffs appear to be speculating that Farmer Mac's funding will

have the effect of keeping National Rural's management in place, and that management

then supposedly will continue to perpetrate "retaliatory and extortionistic [sic]" conduct

against Plaintiffs. Complaint ¶ 106. This is not an allegation of "actual or imminent" harm.

At best, it is an allegation of attenuated and speculative harm and is insufficient by a wide

margin to establish injury in fact.

**B.      Plaintiffs Fail to Show a Causal Relationship Between the Challenged
         Act and the Alleged Injury**

A plaintiff must also show that his injury reasonably can be said to have

resulted from the challenged action of the defendant. *Lujan*, 504 U.S. at 560. Plaintiffs'

claimed harms appear to be centered around the alleged actions of National Rural and its

management and, for the reasons set forth in National Rural's separate motion, are

insufficient to establish standing. The allegations regarding Farmer Mac are even further

removed.  Plaintiffs do not allege that Farmer Mac directly injured them in any way or that Farmer Mac directly participated in any conduct alleged of National Rural.

Plaintiffs' theory of causation appears to be that Farmer Mac's purchase of securities from National Rural somehow allowed National Rural's management to cause some vague injury to Plaintiffs' "business interests and reputation."  This conjecture is far too speculative and unsubstantiated to establish the causation necessary for standing.  *See Simon v. E. Kentucky Welfare Rights Org.,* 426 U.S. 26, 44 (1976) (holding that "unadorned speculation will not suffice to invoke the federal judicial power").  Plaintiffs do not allege a direct causal link between Farmer Mac's purchase of National Rural securities and their alleged injuries to their "business interests and reputation."  Complaint ¶ 103.  Instead, they allege layer after layer of speculation to the effect that, *if* Farmer Mac had not purchased National Rural securities and notes, then National Rural *would have* gone bankrupt, and once it did so *would have* replaced its allegedly corrupt management, and had it done so then National Rural *would have* ended its alleged scheme of subsidizing loans to the Rural Telephone Finance Corporation (not named as a defendant) and, if it had stopped this alleged subsidization, Plaintiffs might not have suffered undefined "irreparable harm."  Complaint ¶¶ 106, 108, 109.  This convoluted path falls far short of demonstrating that Plaintiffs' alleged injuries are fairly traceable to any conduct of Farmer Mac.

## C. Plaintiffs' Alleged Injuries Cannot Be Redressed By Any Decision of this Court

In order for a plaintiff to establish standing, he must show that it is "likely," as opposed to merely "speculative," that his injury will be "redressed by a favorable decision." *Lujan,* 504 U.S. at 561.  Here, Plaintiffs have requested declaratory and

injunctive relief to prevent Farmer Mac from making additional investments in National Rural securities.

As an initial matter, the recently enacted Farm Bill specifically authorizes Farmer Mac to make investments like those it made in National Rural securities and notes without special authorization from the FCA. Section 5406 of the Farm Bill expands the definition of a "qualified loan" eligible for Farmer Mac's programs to include a loan in "an electric or telephone facility by a cooperative lender to a borrower that has received, or is eligible to receive, a loan under the Rural Electrification Act of 1936. . ." Food, Conservation and Energy Act, Pub. L. No. 110-234, § 5406(a)(3), 122 Stat. 923 (May 22, 2008). The regulatory provision that Plaintiffs allege Farmer Mac violated, 12 C.F.R. § 652.35, does not apply to such qualified loans. 12 C.F.R. §§ 652.5, 652.35 (2008). The Court cannot redress the harm Plaintiffs complain of because the investments that they allege to be unlawful are now expressly permitted by statute.

Furthermore, even if the Court issued an injunction or declaration to prevent further investments, there has been no showing that such relief would be likely to redress Plaintiffs' alleged harms. Plaintiffs have alleged that their harms stem from Farmer Mac's "allowing" National Rural's management to be kept in place. *See* Complaint at ¶ 106. Plaintiffs, however, do not seek any remedies that would cause National Rural's management to be removed or will somehow lead to management treating Plaintiffs more favorably. The connection between the relief Plaintiffs seek and the harm they allege is far too tenuous to support Article III standing. *See Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007) (finding no redressability where there was no showing that undoing the governmental action would undo the harm).

Plaintiffs ask the Court to issue a mandatory injunction against Farmer Mac "to force compliance with the law." Prayer for Relief ¶ 3. As a matter of law, however, the FCA is the only entity with authority to review and approve Farmer Mac's investments and has already done so with respect to the investments at issue here. 12 C.F.R. § 652.35(e) (2008); *see* Ex. B. Accordingly, neither a declaration nor a mandatory injunction by this Court would change the FCA's exercise of its discretion to approve Farmer Mac's previous investments in National Rural securities and notes. Furthermore, under the expanded investment authority granted to Farmer Mac in the Farm Bill, no FCA approval even is required for future investment.

## II.    Plaintiffs Lack Prudential Standing

In addition to the lack of Article III standing, Plaintiffs have not demonstrated prudential standing. To have prudential standing, a plaintiff's grievance must fall within the zone of interests protected by the statutory provision or constitutional guarantee invoked in the suit. *Am. Fed'n of Gov't Employees, AFL-CIO v. Rumsfeld*, 321 F.3d 139, 143 (D.C. Cir. 2003). "Plaintiffs fail the zone of interests test required to establish prudential standing if their interests are so marginally related to or inconsistent with the implicit purposes of the statute in question that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.*

In this case, Plaintiffs have failed to cite any statutory basis for their claim. Instead, Plaintiffs have cited a federal regulation, 12 C.F.R. § 652.35, which was promulgated under the Farm Credit Act of 1971, as amended. It is well established, however, that the Farm Credit Act does not create a private right of action. *Williams v. Fed. Land Bank of Jackson*, 729 F. Supp. 1387 (D.D.C. 1990), *aff'd,* 954 F.2d 774 (D.C. Cir.

1992); *see also Made In The USA Found. v. Gen. Motors Corp.*, Civ. No. 04-0553, 2005

WL 3676030 (D.D.C. March 31, 2005) (Robertson, J.) (dismissing suit for lack of standing

where the statute at issue did not provide for private rights of action).

Even if the Farm Credit Act did create a private right of action, Plaintiffs still

would not fall within the zone of interests protected by the statute. The express purpose of

the Farm Credit Act is to improve the income and well-being of American farmers by

increasing the availability of sound, adequate, and constructive credit. 12 U.S.C. § 2001

(2000). Plaintiffs are not farmers, members of farmer organizations, or agricultural

borrowers or lenders. Thus, Plaintiffs have no interests protected by the statute. *See*

*Bayvue Apartments Joint Venture v. Ocwen Fed. Bank FSB*, 971 F. Supp. 129, 132 (D.D.C.

1997) (Robertson, J.) (dismissing for lack of standing where plaintiffs were not within the

zone of interests protected by the statute or regulation at issue).

## III.    The Complaint Does Not State a Claim Upon Which Relief Can Be Granted

Plaintiffs have failed to state any claim upon which relief can be granted.

The Complaint should be dismissed because Plaintiffs can prove no set of facts that would

entitle them to any relief. *Chambers v. U.S. Dep't of Interior*,  538 F.Supp.2d 262, 268

(D.D.C.,2008) (Robertson, J.) (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1967

(2007)). Here, Plaintiffs have not alleged any statute or cause of action which permits them

to sue Farmer Mac.

Plaintiffs allege that the National Rural securities and notes Farmer Mac

purchased did not meet the eligibility requirements of 12 C.F.R. § 652.35 and therefore

were "unlawful." Complaint ¶ 75. This plainly is wrong as a matter of law because the rule

specifically allows the FCA to approve investments not meeting the eligibility requirements,

12 C.F.R. § 652.35(e), and there is no dispute that the FCA did in fact approve the investments. Indeed, Plaintiffs themselves concede that Farmer Mac acted with the approval of the Farm Credit Administration's Office of Secondary Market Oversight, *see* Complaint at ¶ 79. The Court need not even consider Plaintiffs' allegation that the FCA approval should be disregarded, Complaint ¶ 80, because there is no private right of action to enforce the investment eligibility requirements. Nothing in the language of the regulation creates a private remedy for Plaintiffs.[6] Nothing in the underlying statute, the Farm Credit Act, allows for such a private remedy. *See Williams*, 729 F. Supp. 1387, *aff'd,* 954 F.2d 774; *see also Schroder v. Volcker*, 864 F.2d 97, 98 (10th Cir. 1988); *Harper v. Fed. Land Bank of Spokane*, 878 F.2d 1172, 1178 (9th Cir. 1989). Nor is such a private right of action provided by the Agricultural Credit Act of 1987, the legislation that added Title VIII to the Farm Credit Act and created Farmer Mac. *Wagener v. Penn W. Farm Credit, ACA*, 109 F.3d 909, 912 (3rd Cir. 1997). Accordingly, Plaintiffs have no statutory basis to bring this cause of action.

Recent amendments to the Farm Credit Act make the futility of Plaintiffs' claims even more apparent. The crux of Plaintiffs' complaint against Farmer Mac is their allegation that Farmer Mac has violated the federal regulation, 12 C.F.R. § 652.35, specifying the types of "non-program investments" it may make. Non-program investments, in turn, are defined as "investments other than those in. . . [q]ualified loans as defined in section 8.0(9) of the Farm Credit Act of 1971, as amended." 12 C.F.R § 652.5

---

[6] Similarly, the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, does not afford a private remedy to Plaintiffs because Farmer Mac, a stockholder-owned corporation, is not an "agency" for purposes of the judicial review provisions of the APA since it does not have "the authority to act with the sanction of government." *Indep. Bankers Assoc. of Am. v. Nat'l Credit Union Admin.*, 936 F. Supp. 605, 614 (W.D. Wis. 1996) (finding that Farm Credit Banks and Farm Credit Associations were not agencies for purposes of APA review).

(2008).  The recently enacted Farm Bill expressly defines a qualified loan to include loans to "electric or telephone facilit[ies] by a cooperative lender."  Food, Conservation and Energy Act, Pub. L. No. 110-234, § 5406(a)(3), 122 Stat. 923, (May 22, 2008).  In other words, Congress has now authorized Farmer Mac to acquire as program investments exactly the types of loans Farmer Mac previously had acquired from National Rural as non-program investments.  The provisions of 12 C.F.R. § 652.35 no longer are applicable to the loans Plaintiffs challenge, compelling dismissal for failure to state a claim on which relief may be granted.

Finally, Plaintiffs sprinkle their complaint with phrases like "security fraud," "scienter," and "embezzlement," but do not even attempt to allege fundamental elements of the claims to which such terms relate.  Indeed, Plaintiffs do not even allege that they bought or sold any security of National Rural.  Even if the Court were to construe the complaint as asserting a claim of aiding and abetting federal securities fraud, however, it still must be dismissed as to Farmer Mac because the Supreme Court has foreclosed such claims by ruling that the federal securities laws do not permit a claim for aiding and abetting a fraud. *See Central Bank of Denver,* 511 U.S. at 191 (holding no private right of action for aiding and abetting federal securities fraud).  Finally, to the extent that Plaintiffs recklessly allege, without any factual support, that Farmer Mac committed an act of criminal embezzlement, *see* Complaint at ¶ 93, that claim too fails because no private right of action exists under the applicable statute.  *Fed. Sav. & Loan Ins. Corp.*, 816 F.2d at 137 (holding that 18 U.S.C. § 657 provides no basis for implying a civil cause of action).

## CONCLUSION

For the foregoing reasons, and for those set forth in the motion of defendant National Rural, the complaint should be dismissed.

Dated:    May 30, 2008                              Respectfully submitted,
          Washington, DC

                                                    /s/ Adam P. Strochak
                                                    Adam P. Strochak (D.C. Bar No. 439308)
                                                    Alexander O. Levine  (D.C. Bar No. 501924)
                                                    WEIL, GOTSHAL & MANGES LLP
                                                    1300 Eye Street, NW
                                                    Suite 900
                                                    Washington, DC 20005
                                                    Tel: (202) 682-7000
                                                    Fax: (202) 857-0939

                                                    Anthony J. Albanese
                                                    WEIL, GOTSHAL & MANGES LLP
                                                    767 Fifth Avenue
                                                    New York, New York 10153
                                                    Tel: (212) 310-8000
                                                    Fax: (212) 310-8007

                                                    Counsel for Defendant Federal Agricultural
                                                    Mortgage Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of May, 2008, a true and accurate copy of

the above document was filed electronically in the case identified above.  A copy of the filing

will be sent to the parties listed below via United States Postal Service mailing.

JEFFREY J. PROSSER
P.O. Box 5227
St. Croix, VI 80823
PRO SE

JOHN P. RAYNOR
10110 Nicholas Street
Suite 102
Omaha, NE 68114
(402) 498-4400
PRO SE

Civil Process Clerk
United States Attorney's Office for the District of Columbia
555 4th Street, NW
Washington, DC 20530

United States Department of Agriculture
1400 Independence Avenue, S.W.
Washington, DC 20250

The Honorable Michael B. Mukasey
United States Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

/s/ Adam P. Strochak
Adam P. Strochak

# EXHIBIT A

| The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results |
|---|

| THIS SEARCH | THIS DOCUMENT | GO TO |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

# H.R.2419

## Food, Conservation, and Energy Act of 2008 (Enrolled as Agreed to or Passed by Both House and Senate)

--H.R.2419--

H.R.2419

### One Hundred Tenth Congress

### of the

### United States of America

*AT THE SECOND SESSION*

Begun and held at the City of Washington on Thursday,

the third day of January, two thousand and eight

An Act

To provide for the continuation of agricultural programs through fiscal year 2012, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

## SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

(a) Short Title- This Act may be cited as the `Food, Conservation, and Energy Act of 2008'.

(b) Table of Contents- The table of contents of this Act is as follows:

SEC. 5406. RURAL UTILITY LOANS.

(a) Definition of Qualified Loan- Section 8.0(9) of the Farm Credit Act of 1971 (12 U.S.C. 2279aa(9)) is amended--

(1) in subparagraph (A)(iii), by striking `or' at the end;

(2) in subparagraph (B)(ii), by striking the period at the end and inserting `; or'; and

(3) by adding at the end the following:

`(C) that is a loan, or an interest in a loan, for an electric or telephone facility by a cooperative lender to a borrower that has received, or is eligible to receive, a loan under the Rural Electrification Act of 1936 (7 U.S.C. 901 et seq.).'.

(b) Guarantee of Qualified Loans- Section 8.6(a)(1) of such Act (12 U.S.C. 2279aa-6(a)(1)) is amended by inserting `applicable' before `standards' each place it appears in subparagraphs (A) and (B)(i).

(c) Standards for Qualified Loans- Section 8.8 of such Act (12 U.S.C. 2279aa-8) is amended--

(1) in subsection (a)--

(A) by striking the first sentence and inserting the following:

`(1) IN GENERAL- The Corporation shall establish underwriting, security appraisal, and repayment standards for qualified loans taking into account the nature, risk profile, and other differences between different categories of qualified loans.

`(2) SUPERVISION, EXAMINATION, AND REPORT OF CONDITION- The standards shall be subject to the authorities of the Farm Credit Administration under section 8.11.'; and

(B) in the last sentence, by striking `In establishing' and inserting the following:

`(3) MORTGAGE LOANS- In establishing';

(2) in subsection (b)--

(A) in the matter preceding paragraph (1), by inserting `with respect to loans secured by agricultural real estate' after `subsection (a)'; and

(B) in paragraph (5)--

      (i) by striking `borrower' the first place it appears and inserting `farmer or rancher'; and

      (ii) by striking `site' and inserting `farm or ranch';

   (3) in subsection (c)(1), by inserting `secured by agricultural real estate' after `A loan';

   (4) by striking subsection (d); and

   (5) by redesignating subsection (e) as subsection (d).

(d) Risk-Based Capital Levels- Section 8.32(a)(1) of such Act (12 U.S.C. 2279bb-1 (a)(1)) is amended--

   (1) by striking `With respect' and inserting the following:

      `(A) IN GENERAL- With respect'; and

   (2) by adding at the end the following:

      `(B) RURAL UTILITY LOANS- With respect to securities representing an interest in, or obligation backed by, a pool of qualified loans described in section 8.0(9)(C) owned or guaranteed by the Corporation, losses occur at a rate of default and severity reasonably related to risks in electric and telephone facility loans (as applicable), as determined by the Director.'.

EXHIBIT B

# FARMER MAC

*Financing Rural America*

**Federal Agricultural Mortgage Corporation**
1133 Twenty-First Street, N.W. ■ Washington, D.C. 20036
202-872-7700 ■ FAX 202-872-7713
800-879-FARM ■ www.farmermac.com

June 9, 2005

Andrew Jacob, Director
Office of Secondary Market Oversight
Farm Credit Administration
1501 Farm Credit Drive
McLean, VA 22102-5090

Re: Investments in Rural America Program – Rural Utilities

Dear Mr. Jacob:

The statutory charter of the Federal Agricultural Mortgage Corporation ("Farmer Mac") grants the Corporation certain powers to be used in carrying out its mission, including the authority to purchase or sell any securities or obligations.[1] Under that authority, Farmer Mac is proposing to develop and implement a mission-related investment program analogous to FCA's Investments in Rural America initiative, subject to the approval of the Farm Credit System ("FCA"). This letter provides information about Farmer Mac's proposed Investments in Rural America – Rural Utilities program for FCA's consideration.

Farmer Mac currently operates an active secondary market for agricultural real estate mortgage loans and United States Department of Agriculture ("USDA") guaranteed portions of loans guaranteed under the Consolidated Farm and Rural Development Act (7 U.S.C. §1921, *et. seq.*). Working with both Farm Credit System ("FCS") institutions and other agricultural lenders, Farmer Mac provides liquidity to originators and holders of agricultural real estate mortgages and USDA-guaranteed loans. Since the revision of Farmer Mac's Congressional charter in 1996, Farmer Mac has purchased, guaranteed and issued credit enhancements for more than $9.4 billion of loans under its Farmer Mac I program and had approximately $4.4 billion outstanding under that program as of March 31, 2005. Additionally, Farmer Mac has purchased more than $1.6 billion of USDA-guaranteed portions of loans under the Farmer Mac II program and had approximately $777 million outstanding under that program as of March 31, 2005.

Notwithstanding the liquidity and lending capacity Farmer Mac has provided to rural lenders to the benefit of the agricultural community, we recognize that significant liquidity limitations persist in the national rural development financing market. In an effort to promote affordable financing for agricultural and rural borrowers, and to assist further in the advancement of Rural

---

[1] "(c) The Corporation shall be a body corporate and shall have the following powers . . . (12) To acquire, hold, lease, mortgage or dispose of, at public or private sale, real and personal property, purchase or sell any securities or obligations, and otherwise exercise all the usual incidents of ownership of property necessary and convenient to the business of the Corporation." (emphasis added). 12 U.S.C. §2279aa-3(c)(12)

Andrew Jacob, Director
Office of Secondary Market Oversight
Farm Credit Administration
June 9, 2005
Page 2 of 8

America, Farmer Mac seeks to expand its relationships with other lenders to promote increased liquidity in rural lending, including for member-owned rural utility cooperatives. Farmer Mac proposes to use its Investments in Rural America – Rural Utilities program to purchase investment securities backed by pools of loans to member-owned rural utility cooperatives and loans to rural utilities that are guaranteed by USDA through the Rural Utilities Service. An initial partnership with the National Rural Utilities Cooperative Finance Corporation ("CFC") will enable Farmer Mac to create a secondary market for rural utilities loans CFC originates, improve CFC's (and other lenders') ability to finance the development of additional necessary infrastructure in Rural America, and have a positive impact on rural development lending not currently facilitated by Farmer Mac's secondary market programs.

Farmer Mac's proposed Investments in Rural America – Rural Utilities program will:

➢ provide CFC's rural borrowers/members with an additional source of capital;

➢ lower the cost of funds for CFC as a result of partnering with Farmer Mac:

o CFC, in turn, will pass those savings on to its cooperatively-owned member utilities and ultimately to the agricultural producers and rural communities served by those utilities; and

o Farmer Mac's ability to lower CFC's cost of funds is based, in large measure, on:

▪ Farmer Mac's willingness to take somewhat lower returns on its investments in furtherance of the Corporation's mission of providing liquidity to lenders in Rural America; and

▪ creating investment structures and placements that result in more efficient pricing than CFC can currently achieve on its own while demonstrating the liquidity of CFC's assets in a manner that would improve CFC's credit rating from a nationally recognized statistical rating organization;

➢ permit member-owned rural utility cooperatives access to fixed rate loans on favorable terms;

➢ provide greater liquidity to CFC, enabling CFC to expand its lending activities in rural areas and diversify its sources of funds;

➢ establish a model for similar Farmer Mac partnerships with other lenders in Rural America; and

➢ enable CFC to bring more of its benefits to a greater number of rural communities, providing the resources to energize the growth and vibrancy of Rural America and, in so doing, support the agricultural economy and increase future business prospects for Farmer Mac.

Andrew Jacob, Director
Office of Secondary Market Oversight
Farm Credit Administration
June 9, 2005
Page 3 of 8

The definition of "rural areas" Farmer Mac will use in this Investments in Rural America program[2] will ensure that the loans identified for the program are limited to rural utilities loans that provide necessary electricity to a significant number of agricultural producers and rural communities. These loans could be packaged by the originating lender, with Farmer Mac assistance, into asset-backed securities ("ABS") or used as security for a corporate obligation of the originating lender ("Collateralized Bond"). In addition, securities that represent interests in these loans (particularly the USDA-guaranteed loans) also could be purchased by Farmer Mac.

Farmer Mac intends to partner with other institutions, including FCS institutions, to provide this added liquidity and capital to CFC. Farmer Mac further intends to sell interests in some of the rural utilities investment assets to other institutions, in the form of structured ABS (or other appropriate securitization structures) in which the Corporation could retain either a pro-rata or subordinated tranche of the security, thus bringing additional institutions to the pool of investors in CFC.

In establishing the Investments in Rural America – Rural Utilities program, Farmer Mac intends to deliver benefits to Rural America while continuing to focus on the development of its core program business. Accordingly, Farmer Mac designed this Investments in Rural America program to ensure that an appropriate balance is maintained between the growth of that program and the growth of Farmer Mac's core program business. Farmer Mac believes that this Investments in Rural America program strengthens and enhances the Corporation's ability to build its core program business by:

> ➢ developing new partnerships with lenders in Rural America;

> ➢ demonstrating a commitment to Rural America, the home for many agricultural lenders; and

> ➢ showing Farmer Mac's ability to innovate appropriately to meet various financing needs of agricultural real estate owners and Rural America.

*Policies and Procedures*

Farmer Mac management will present a draft investment policy for the proposed Investments in Rural America – Rural Utilities program for consideration by its Board of Directors at its June 16, 2005 meeting. The Corporation will develop policies and procedures to ensure that qualified personnel perform the necessary due diligence of the underlying rural electric distribution loans.

---

[2] For purposes of this program only, "rural areas" shall include the service area of any borrower that either: (1) consists of "rural areas" as defined by the Farm Security and Rural Investment Act of 2002 as having a population of 50,000 individuals or less; or (2) satisfies at least two of the following three minimum criteria: (a) 1,550 farms in the service area; (b) 10 percent of power distributed by the borrower is used for irrigation; or (c) 23 percent of the land in the service area counties is designated as farmland by USDA. These criteria were developed after a review of statistics relating to the underlying rural areas served by CFC's borrowers and other available data.

Andrew Jacob, Director
Office of Secondary Market Oversight
Farm Credit Administration
June 9, 2005
Page 4 of 8

Those policies and procedures will further ensure that underlying collateral risk will be monitored and measured appropriately. Farmer Mac will maintain the necessary systems and internal controls for the financial reporting, accounting and on-going monitoring of these investments, including evaluating and, as appropriate, testing their marketability and liquidity. See *Overcollateralization* below.

*Issuers*

Under the proposed program, rural utilities investment assets in the form of ABS (or other appropriate security structures) would be issued either directly by the originating lender who would create the security for sale to Farmer Mac, or by Farmer Mac. A Collateralized Bond would be issued by the originating lender. Alternatively, for rural utilities investments in the form of securities that are USDA-guaranteed loans held by Farmer Mac, the "issuer" would be USDA, which is extending the guarantee.[3] A Farmer Mac-created trust would be the issuer of any asset-backed securities evidencing interests in, or backed by, some or all of those securities.

*Qualifying Collateral*

As will be specified in the policy to be adopted for the Investments in Rural America – Rural Utilities program, the underlying collateral for these rural utilities investments will be limited to:

(a) pools of first-lien mortgage loans that:

(i) are made to finance the distribution of electricity in rural areas;

(ii) meet the underwriting standards of CFC;

(iii) are classified within the top 3 (of 10) CFC risk categories; and

(iv) are obligations of member-owned rural utility cooperatives the service areas of which are "rural areas"; or

(b) loans that are guaranteed by the USDA acting through the Rural Utilities Service.

Rural electric cooperatives engaged in the distribution of electricity are utilities engaged in retail sales of electricity to consumers in their service areas. Most of the distribution systems have all-requirements power purchase contracts with their power supply systems, which are owned and controlled by the member distribution system.[4] These contracts have provisions for rate adjustments to cover the costs of supplying power. Most of the distribution systems have the authority to

---

[3] Notes or bonds guaranteed by USDA through RUS should be viewed as securities because: (1) the full faith and credit guarantee of the United States is a credit enhancement to the loan that lenders and investors rely upon to assure repayment of the obligation; and (2) any mortgages that secure such notes or bonds are made for the benefit of USDA, not the holder of the obligation.
[4] CFC Annual Report on Form 10-K/A for the Fiscal Year Ended May 31, 2004, as filed with the Securities and Exchange Commission August 25, 2004, pp. 3-4.

Andrew Jacob, Director
Office of Secondary Market Oversight
Farm Credit Administration
June 9, 2005
Page 5 of 8

establish rates for their consumer members subject to state and federal regulations.[5] CFC's underwriting standards require that, for long-term loan advances, distribution systems must:

> ➤ maintain an average modified debt coverage ratio of 1.35 or greater;
>
> ➤ be in good standing with CFC and their states of incorporation;
>
> ➤ supply evidence of proper corporate authority;
>
> ➤ deliver to CFC annual audited financial statements and a compliance certificate; and
>
> ➤ be in compliance with all other terms of its loan agreement.[6]

Since 1993, CFC has incurred net losses of less than $2 million out of a total current (not aggregate) portfolio of approximately $11 billion of loans that meet the standards set forth in (a)(i), (ii) and (iv) above.[7]

*Effect on Farmer Mac Portfolio Concentration*

Farmer Mac expects that rural utilities investment assets will be backed by loans secured by property throughout the United States, with an expected concentration in the South and Midwest – areas of the country where Farmer Mac has limited exposure at this time. Further, since Farmer Mac intends to limit its exposure to any one rural utility cooperative to not more than 10 percent of core capital (currently $23.5 million), the Corporation will not incur a material concentration of risk to any one entity.

*Overcollateralization*

Considering the high quality of the described rural utilities assets and the CFC classification or the USDA guarantee, the proposed program would not require an issuer of the investments to support its obligations on a continuous basis by pledging qualifying collateral that exceeds outstanding obligations held by Farmer Mac. Farmer Mac's Board of Directors will approve credit standards governing the credit risk parameters Farmer Mac is willing to assume with respect to assets backed by rural utilities loans and Farmer Mac will develop policies and procedures to implement those standards or, if appropriate, standards relating to the credit of the issuer.

*Terms*

Any Collateralized Bond purchased by Farmer Mac under the proposed program would have a maturity not greater than 10 years from date of purchase by Farmer Mac. Depending on the securitization structure, any ABS could have a maturity not to exceed the latest maturity of the loans underlying the ABS. The individual rural utilities loans backing an ABS or securing a Collateralized

---

[5] *Ibid.*, p. 50.
[6] *Ibid.*, p. 7.
[7] Information supplied to Farmer Mac by CFC.

Andrew Jacob, Director
Office of Secondary Market Oversight
Farm Credit Administration
June 9, 2005
Page 6 of 8

Bond would have terms to maturity up to 40 years; the securities that are USDA-guaranteed loans to be purchased by Farmer Mac could have maturities up to 20 years.

At inception, the structure and resulting pricing of investments in rural utilities purchased or held by Farmer Mac will not result in Farmer Mac recognizing a permanent impairment in fair market value based on the application of GAAP.

*Program Limits*

Under the proposed Investments in Rural America – Rural Utilities program, Farmer Mac intends to purchase and hold rural utilities investments in an aggregate amount not to exceed 50 percent of Farmer Mac's total on- and off-balance sheet program assets (which, based on Farmer Mac's current program assets, implies a maximum total investment of $2.6 billion under the Investments in Rural America – Rural Utilities program). This limit would be separate from any current limitations for Farmer Mac's non-program investments. Farmer Mac will limit the growth of assets held on Farmer Mac's balance sheet under the program to not more than 10 percent of Farmer Mac's total on- and off-balance sheet program assets every six months, determined at the end of each six-month period, subject to Farmer Mac's determination that the assets have liquidity similar to that of other assets held by Farmer Mac.

Upon initiation of the partnership with CFC, Farmer Mac intends to purchase a $500 million Collateralized Bond from CFC by June 30, 2005. $500 million is the minimum economically feasible amount that allows Farmer Mac to deliver the intended program benefits to CFC and its members. Timely completion of the initial transaction will provide additional time for CFC to work with its members to evaluate the benefits of participation in future transactions. In subsequent periods, Farmer Mac will complete additional transactions subject to the 10 percent per six-month period limit, but with the additional expectation that anticipated core program growth will equal or exceed the growth of this Investments in Rural America program.

*Effect on Farmer Mac's Profitability*

Farmer Mac Board policy currently limits the Corporation's liquidity investment portfolio to approximately $1.6 billion. The Corporation currently earns 80 percent of its pre-tax income from program activities; the remaining 20 percent of pre-tax income is earned from the non-program investments in its portfolio of liquid investment securities. Farmer Mac estimates the annualized pre-tax income from the $1.05 billion from the Investments in Rural America – Rural Utilities program (assuming the maximum per annum limit under the proposed program) would approximate 15 percent of Farmer Mac's pre-tax income and that program income plus income from this Investments in Rural America program would collectively contribute approximately 82 percent of Farmer Mac pre-tax income on an annualized basis after the first year.

Andrew Jacob, Director
Office of Secondary Market Oversight
Farm Credit Administration
June 9, 2005
Page 7 of 8

*Deterioration of Credit Quality in Rural Utilities Investments*

Based on the high quality of the rural utilities investments proposed to be acquired, including the strong history of extremely limited losses on CFC-originated electric distribution loans, it is unlikely that any significant or material deterioration would occur. If Farmer Mac decided to sell these assets, Farmer Mac believes that it could sell the assets into the capital markets. After the initial transaction, Farmer Mac expects to place a portion of subsequent Investments in Rural America transactions with other investors.

*Effect on Farmer Mac's Capital*

Farmer Mac's core capital of $235.6 million as of March 31, 2005 exceeded the statutory minimum capital requirement of $127.9 million by $107.7 million. Farmer Mac's regulatory capital of $251.9 million as of March 31, 2005 exceeded the RBC requirement of $59.3 million by approximately $192.6 million. Farmer Mac will give due capital planning consideration to the effect of the addition of the described rural utilities assets on the Corporation's capital adequacy measures, including the capital needs for other Farmer Mac business. As proposed, Farmer Mac's Investments in Rural America program would be limited to approximately $525 million of on-balance sheet growth every six months. In terms of Farmer Mac's statutory minimum capital requirements, the capital supporting such investments would be approximately $14.4 million. Farmer Mac believes that its continued retention of earnings to build capital (net of dividends paid and its stock buy-back program) and the prudent management of its capital allocation to this Investments in Rural America program and core program activities will enable the Corporation to grow its overall business safely and in a balanced manner and further serve the needs of Rural America.

*Duration of Investment Program*

Farmer Mac intends to continue the Investments in Rural America – Rural Utilities program for at least three years. On an ongoing basis and at the end of this three year initial term, Farmer Mac will evaluate the performance of the program separately, and as a part of our overall secondary market efforts to bring liquidity to the rural lending markets. Farmer Mac will base its evaluation on the benefits brought to rural utilities and their customers in Rural America, the volume of loan assets available that meet the Corporation's criteria over time, and the effectiveness of the program in creating a competitive marketplace for the benefit of Rural America.

Andrew Jacob, Director
Office of Secondary Market Oversight
Farm Credit Administration
June 9, 2005
Page 8 of 8

    We are available to discuss this matter in further detail or answer any questions at your convenience.  Thank you in advance for your consideration of this request for program approval.

Sincerely,

Henry D. Edelman
President

Jun 24 2005  10:32      P. 02

**Farm Credit Administration**

1501 Farm Credit Drive
McLean, Virginia 22102-5090
(703) 883-4000

June 24, 2005



Mr. Henry Edelman
President and Chief Executive Officer
Federal Agricultural Mortgage Corporation
Two Lafayette Center
1133 - 21st Street, N.W., Suite 600
Washington, DC  20036

Dear Mr. Edelman:

In your June 9, 2005, letter, you requested the Farm Credit Administration's (FCA) approval to purchase investment securities issued by the National Rural Utilities Cooperative Finance Corporation (CFC).  The securities would be backed by electric distribution system loans made by CFC to cooperative entities that serve rural areas.

As presented, the investment purchases would provide the Federal Agricultural Mortgage Corporation's (Farmer Mac) the opportunity to increase its total book of business.  This increase may also have a positive impact on Farmer Mac's ability to meet its primary goal of generating core program growth in its Farmer Mac I and II programs.  The proposed investments, however, do not meet all the requirements of the Non-Program and Liquidity regulation recently adopted by the FCA Board.

Subject to conditions, the FCA Board has approved Farmer Mac's purchase of investment securities issued by the CFC.  The FCA Board also authorized Farmer Mac to hold these investments notwithstanding the portfolio size, term, and rating requirements of the Non-Program and Liquidity regulation once it becomes effective.  These conditions are contained in an attachment to this letter.

If you have any questions regarding this approval or the attached conditions, please contact Andrew Jacob, Director of the Office of Secondary Market Oversight at (703) 883-4356.

Sincerely,

Jeannette C. Brinkley
Secretary to the Board

Attachment

Copy to:    Frederick L. Dailey
            Chairman of the Board

Attachment

**FCA Approval Conditions for CFC Investments**

*Originating Lender:*    National Rural Utilities Cooperative Finance Corporation

*Objective:*    Investments in the Collateralized Obligations and asset-backed securities (ABS) must be designed to provide Farmer Mac a safe and sound limited investment opportunity that generates reasonable returns, enhances liquidity of entities serving rural areas in support of agriculture, and increases awareness of Farmer Mac in the secondary market.

*Security Structures:*    Securities purchased may be Collateralized Obligations (i.e., bonds or notes) or ABS as issued by the originating lender and backed by qualifying collateral.

*Terms:*    Collateralized Obligations or ABS securities purchased must mature within 10 years of issuance, with maturities greater than 10 years subject to the approval on a case-by-case basis by the Director of Office of Secondary Market Oversight (OSMO). For ABS backed by loans with interest rates that reset within 5 years, the maturity may not exceed the latest maturing loan. At inception of a security offering, the structure and pricing of security purchased must not result in Farmer Mac recognizing a permanent impairment in fair market value based on the application of Generally Accepted Accounting Principles. Interest on the securities may be fixed or floating rates, and the securities may permit full or partial redemption by the issuer prior to final maturity. Minimum denominations of the securities must be set a level that enhances overall secondary market liquidity and facilitates sales to other secondary market investors.

*Registration:*    There must be a requirement in any purchase agreement that the security be registered with the Securities and Exchange Commission (SEC) upon the request of Farmer Mac. Farmer Mac will be required to make such a request (or effectuate the registration) upon direction from FCA that the security be registered.

*Delivery:*    Purchased securities must be delivered in registered certificate form and convertible to book entry form upon registration with the SEC.

*FCA Review:*    Farmer Mac must submit to OSMO all securities-related documents 2 business days (48 hours) before acquisition (i.e., trade date). Documents include, but are not limited to, prospectus and related supplement, term sheet, legal opinions, and supporting investment analysis. Based on a document review, the Director of OSMO may prohibit the proposed securities purchase because of noncompliance with the approval terms and conditions or safety and soundness concerns.

*Qualifying Collateral:*    Collateralized Obligations or ABS securities must be secured by pools of qualifying first-lien mortgages of various maturities to member-owned rural utility cooperatives that distribute electricity to rural areas or loans guaranteed by the United States Department of Agriculture (USDA)

2

acting through the Rural Utilities Services. To qualify, a first-lien mortgage must meet the underwriting standards of CFC and be classified within the top 3 CFC risk categories (i.e., rated better than 4 using CFC's current rating scale). Rural areas are: (1) as defined by the Farm Security and Rural Investment Action of 2002; or (2) the service area of the mortgage borrower satisfies 2 of 3 minimum criteria. The minimum criteria are: (1) 1,550 of farms reside in the borrower's service area; (2) 10 percent of power distributed by the borrower is used for irrigation; and (3) 23 percent of the land in the service area counties is designated as farmland by USDA. Mortgages backing the securities must be geographically distributed in two or more regions as currently defined by Farmer Mac (Northwest, Southwest, Mid-North, Mid-South, Northeast, and Southeast) and enhance the overall geographic diversification of Farmer Mac's entire book of business. Exposure to any one qualifying mortgage borrower is limited to 10 percent of Farmer Mac's regulatory capital.

*Due Diligence:*    Farmer Mac must perform appropriate due diligence of individual investment securities prior to acquisition, including the evaluation of qualified collateral supporting the securities by individuals who are experienced reviewers of rural utility credits.

*Marketability:*    Securities purchased must be marketable in the secondary market to other investors within a reasonable period of time (6 months or less) and at a market price that reflects the fair value of the security based on an evaluation of the underlying cash flows. Based on Farmer Mac Board policy requirements, Farmer Mac must periodically evaluate the secondary market liquidity of securities purchased to ensure these securities remain marketable and test their liquidity through sales to other investors. With the exception of the first Collateralized Obligation purchases in the 2005 calendar year, Farmer Mac may not own more than 60 percent of the total outstanding of a specific Collateralized Obligation or ABS offering 6-months after the securities initial sale to and purchase by Farmer Mac.

*Limits:*    Farmer Mac may, beginning immediately, purchase up to $500 million of Collateralized Obligations during the remainder of the 2005 calendar year (January 1 to December 31). In subsequent calendar years, Farmer Mac's calendar year purchases of Collateralized Obligations or ABS are limited to the expected and achieved net volume growth of Farmer Mac I and II programs during the calendar year, subject to a maximum of 10 percent of such program volume outstanding unless otherwise approved by the Director of OSMO. Expected net volume growth should be consistent with projections established in Farmer Mac's Business Plan. If securities purchased during a calendar year exceed the actual net growth in Farmer Mac I and II programs, additional purchases of securities may not occur in subsequent calendar years without the approval of the Director of OSMO. The amount of non-program and CFC investments held by Farmer Mac is limited to 35 percent of its total book of business. The total book of business is the fair value of non-program investments and CFC investments held plus

the Farmer Mac I and II program volume outstanding. The total CFC investments held by Farmer Mac is further limited to no more than half of the total investment portfolio, which is the fair value of non-program investments and CFC investments held.

**Credit Rating:**   Farmer Mac may purchase Collateralized Obligations and ABS issued by CFC as long as CFC's senior debt is rated investment grade by two or more Nationally Recognized Statistical Rating Organizations (NRSROs) and its short-term debt is rated in one of the two highest rating categories by an NRSRO.

**Divestiture:**   Under a plan and timeframes approved by the Director of OSMO, Farmer Mac must divest CFC investment securities that do not meet all approval conditions established by the Agency. However, divesture is not required of CFC investments that comply with the Non-Program Investment and Liquidity rule once it becomes effective. The Director of OSMO may direct Farmer Mac to divest such CFC investments if the Director determines the securities pose undue risk to Farmer Mac's capital or earnings, objectives of the CFC investment are not being met, there is insufficient focus on business develop of the Farmer Mac I and II programs, or there is limited or no growth in the Farmer Mac I and II program to support CFC investment levels.

**Internal Controls:**   Farmer Mac must establish specific Board policies, procedures, and necessary internal controls for the prudent management of CFC investments, including establishing qualified collateral standards, investment risk parameters, portfolio concentration limits, monitoring requirements, ongoing reporting to the Farmer Mac Board, and other appropriate controls. Financial reporting for CFC investments must reflect appropriate valuations considering market indications and an evaluation of cash flows and credit quality. The interest rate risk associated with the investment must be managed to limit Farmer Mac's exposure to movements in market interest rates consistent with the parameters established within Farmer Mac's policy and procedures for asset-liability management. Farmer Mac's internal audit process must periodically review the CFC investment program to evaluate adherence to internal parameters and FCA approval conditions.

**FCA Reporting:**   Farmer Mac will provide an annual report to OSMO on CFC investment activity and performance no later than 90 days after calendar yearend, including the benefits achieved for Farmer Mac.

**Expiration:**   Farmer Mac's approval to invest in CFC Collateralized Obligations and ABS that are not in compliance with the Non-Program Investment and Liquidity rule once it becomes effective, as conditioned by FCA, expires on December 31, 2008. The Director of OSMO may annually extend the expiration date if the Director determines it has provided appropriate benefits to Farmer Mac. The Director of OSMO may terminate Farmer Mac approval to invest such CFC Collateralized Obligations and ABS if the Director determines certain conditions exist. Such conditions are that the securities pose undue risk to Farmer Mac's capital or earnings,

Jun 24 2005 10:34    P.06

4

objectives of the CFC investment are not being met, there is insufficient focus on business development of the Farmer Mac I and II programs, there is limited to no growth in the Farmer Mac I and II program to support CFC investment levels, or there are other safety and soundness concerns.

**Farm Credit Administration**     1501 Farm Credit Drive
McLean, Virginia 22102-5090
(703) 883-4000



October 19, 2007

Mr. Henry D. Edelman
President and Chief Executive Officer
Federal Agricultural Mortgage Corporation
1133 – 21ˢᵗ Street, NW., Suite 600
Washington, DC 20036

Dear Mr. Edelman:

In a telephone conversation with us dated October 9, 2007, the Federal Agricultural Mortgage Corporation's (Farmer Mac) Controller Timothy Buzby requested approval of a proposed acquisition of $300-400 million in asset-backed securities (ABS) to be issued in the near future by the National Rural Utilities Cooperative Finance Corporation (CFC). This letter is a response to that request.

The ABS do not meet all the requirements of the Farm Credit Administration's (FCA) nonprogram and liquidity investment regulations that apply to Farmer Mac.[1] However, on June 24, 2005, the FCA permitted Farmer Mac to invest in CFC ABS subject to specified conditions. One of those conditions was that Farmer Mac may not own more than 60 percent of the total outstanding of a specific ABS offering 6 months after the initial purchase of such offering. In a letter to Farmer Mac dated August 15, 2007, we extended to March 31, 2008, the divestment period for the 40 percent portion of the CFC ABS that Farmer Mac purchased on February 15, 2007 and August 10, 2007. This extension, which we granted at Farmer Mac's request, was in consideration of uncertainties in the credit markets caused by sub-prime mortgage issues and other spillover effects, as well as anticipated amendments to the Farm Credit Act that would authorize Farmer Mac to purchase and guarantee loans or interests in loans to rural utilities (electric and telephone) made by cooperative lenders. We informed Farmer Mac that, if these new authorities do not materialize from legislative changes by March 31, 2008, Farmer Mac must sell the ABS subject to the extension as originally intended, or we would reevaluate further continuation of the program.

In our telephone conversation, Mr. Buzby stated that CFC had recently approached Farmer Mac about buying another $300-400 million in CFC ABS in the near future because of favorable rates. Although such a purchase would be permitted under our June 2005 approval if all the conditions were satisfied, we appreciate Farmer Mac's request in light of the present uncertainty regarding Farmer Mac's ability to efficiently sell at least 40 percent of the CFC securities within 6 months, as required (in the event the Farm Credit Act is not amended as described above).

---

[1] 12 CFR 652.35.

2

We have no objection to Farmer Mac purchasing up to $400 million of additional CFC ABS subject to the following conditions:

1. Farmer Mac will not make any additional purchases of CFC securities in excess of the $400 million discussed in this letter until completing a sale of the requisite 40 percent minimum proportion of securities you own today, unless the proposed legislative change becomes law, and

2. Farmer Mac will satisfactorily resolve the issues raised in our July 30, 2007, letter addressing the CFC Credit Due Diligence Review prior to completing any future transactions with CFC after the transaction that is the subject of this letter.

If the proposed legislative changes expanding Farmer Mac's program authorities to rural utility loans do not become law by March 31, 2008, you must timely sell at least 40 percent of the ABS issued by CFC and purchased by Farmer Mac. In that event, if those sales do not occur in a timely manner, continuation of the program will be reevaluated.

If you have any questions, please give me a call at (703) 883-4246.

Sincerely,

Samuel R. Coleman, CFA, Director,
Office of Secondary Market Oversight

Copy to:    Fred L. Dailey
            Chairman of the Board
            Federal Agricultural Mortgage Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

JEFFREY J. PROSSER, and JOHN P.
RAYNOR,

               Plaintiffs,

      v.

FEDERAL AGRICULTURAL
MORTGAGE CORPORATION, UNITED
STATES DEPARTMENT OF
AGRICULTURE, and NATIONAL RURAL
UTILITIES COOPERATIVE FINANCE
CORPORATION,

               Defendants.

Case No. 08-cv-00687-JR

## ORDER DISMISSING PLAINTIFFS' COMPLAINT

Upon consideration of Defendant Federal Agricultural Mortgage Corporation's

Motion to Dismiss, it is hereby ORDERED that this case should be, and hereby is

DISMISSED WITH PREJUDICE.  Costs shall be taxed against the plaintiffs.

So ordered this ___ day of _____, 2008.

_____

United States District Judge