UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY J. PROSSER and JOHN P. RAYNOR, )<br>)<br>Plaintiffs *pro se*, )<br>)<br>v. )<br>)<br>FEDERAL AGRICULTURAL MORTGAGE )<br>CORPORATION, the UNITED STATES )<br>DEPARTMENT OF AGRICULTURE, and the )<br>NATIONAL RURAL UTILITIES )<br>COOPERATIVE FINANCE COOPERATION, )<br>)<br>Defendants. )<br>) | Civil Action No. 08-0687 (JR) |

## **DEPARTMENT OF AGRICULTURE'S MOTION TO DISMISS**

Defendant, U.S. Department of Agriculture ("USDA"), respectfully moves to dismiss this case pursuant to Rules 12(b)(1) and 12(b)(6). Plaintiffs' Complaint fails in numerous ways to establish their standing to bring suit and, therefore, they cannot establish subject matter jurisdiction. Moreover, even if jurisdiction existed, their complaint fails to allege facts that would state a claim upon which relief may be granted.

A memorandum in support of this motion is attached. USDA also joins the arguments in favor of dismissal made by the two other Defendants in this case: the National Rural Utilities Cooperative Finance Cooperation, no. [9]; and the Federal Agricultural Mortgage Corporation, no. [15]; the first of which this Court granted as conceded, no. [14].

June 27, 2008                                                                 Respectfully submitted,

                                                                                              _____
                                                                                              JEFFREY A. TAYLOR, D.C. Bar # 498610
                                                                                              United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY J. PROSSER and JOHN P. RAYNOR, <br><br> Plaintiffs *pro se*, <br><br> v. <br><br> FEDERAL AGRICULTURAL MORTGAGE CORPORATION, the UNITED STATES DEPARTMENT OF AGRICULTURE, and the NATIONAL RURAL UTILITIES COOPERATIVE FINANCE COOPERATION, <br><br> Defendants. | Civil Action No. 08-0687 (JR) |

**DEPARTMENT OF AGRICULTURE'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant, the U.S. Department of Agriculture ("USDA"), respectfully provides this memorandum of points and authorities in support of its motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). As noted in its motion, USDA joins in the arguments made by the two other Defendants in this case, the National Rural Utilities Cooperative Finance Cooperation ("CFC"), and the Federal Agricultural Mortgage Corporation ("Farmer Mac"), in their respective motions to dismiss, nos. [9] and [15]. As explained in those motions and herein, Plaintiffs lack standing to complain about either the loan transactions to which they have no apparent, cognizable connection, or the USDA's issuance of the particular loan guarantees. Indeed, in the recent opposition to Farmer Mac's dispositive motion, Plaintiffs protest that they are not "antagonists" but "whistleblowers" who "seek no personal gain in this action other than an end to the unlawful financial bailout of CFC by Farmer Mac." Plf. Opp. no. [21-2] at 3. Plaintiffs all but concede that they lack standing.

## Background

**USDA loan guarantees:** In light of the thoroughness of the two other dispositive motions filed in this case, little additional background is needed here. Section 313A of the Rural Electrification Act of 1936, as amended (the "REDLG Act"), authorizes the USDA to guarantee the repayment of bonds or notes issued by cooperative or other lenders organized on a not-for-profit basis if the proceeds of such bonds or notes are used to make loans for electrification or telephone purposes. See generally www.rurdev.usda.gov/rbs/busp/redlg.htm. To date, the USDA's Rural Utilities Service ("RUS") has guaranteed the repayment of $2.5 billion in eligible loans made by the Federal Financing Bank ("FFB") to co-Defendant CFC. See Complaint ¶ 7.

**Procedural history:** CFC filed a motion to dismiss, no. [9]. The time for Plaintiffs to file an opposition passed without any response, and the Court granted the motion as conceded on May 30, 2008, no. [14]. That same day, Farmer Mac filed a motion to dismiss, no. [15].[1] Plaintiffs opposed that motion, no. [21], and Farmer Mac filed a reply, no. [22]. Farmer Mac argues that Plaintiffs lack standing, joining the arguments made by CFC in its now-conceded motion. In its instant motion, the USDA also joins the arguments in both motions.

**The Complaint:** The Complaint describes what it calls an "unlawful bailout" of CFC, but which really is a rough description of how the RUS loan program works, without apparent illegality. That aside, however, the primary difficulty with the complaint is discerning a

---

[1] Farmer Mac explained that it was filing its motion out of an abundance of caution, as it read the Court's dismissal order, no. [12], as disposing of the entire case. This follows from the relief requested by CFC in its motion, no. [9], which sought dismissal of the entire case, no. [9] at 8, 32. In a phone call to chambers, however, undersigned counsel confirmed that the Court dismissed only the claims against CFC in the May 30 order.

connection--sufficient to support standing--between the events described in the Complaint and Plaintiffs.  Only two parts of the Complaint make any attempt to show Plaintiffs' connection.

First, in an early section identifying the parties, the Complaint gives a few factual allegations that might have helped allege a sufficient connection, but for the fact that they all describe past relationships, with no description of the present:

- Prosser "was" a "beneficial[] owne[r]" of Innovative Communication Corporation (hereinafter "Innovative"), Complaint ¶ 3, but the Complaint does not say when the ownership occurred or what his ownership interest consisted of.

- Raynor "was the long-time confident of Jeff Prosser." Id.

- Raynor apparently "served as a director, consultant, and attorney" to Innovative. Id.[2]

Then, at the end of the Complaint, several additional paragraphs add:

- Prosser "was" a "beneficial owner[]" of the Virgin Islands Telephone Corporation ("Vitelco").  Id. ¶ 96.

- Innovative "was an associate member" of RTFC, which in turn is alleged to have been National Rural's "facade to make loans to rural telephone companies and their affiliates."  Id. ¶ 97.  The Complaint gives no indication as to when the membership obtained or how that impacts Plaintiffs' claims.

- Vitelco "was" also a member of RTFC, id. ¶ 98, but again, there is no explanation of the timing or relevance of the membership.

---

[2] Raynor "was the long-time confident of Jeff Prosser [and] had served as a director, consultant and attorney to Innovative[.]"  ¶ 3.

3

- Raynor "was" a member of the board of Vitelco. Id. ¶ 99.

Thus, it seems fair to conclude that any possible connection Plaintiffs may have had to the so-called "bail-out" is (1) a thing of the past, and (2) funneled through Plaintiffs' (tenuous and vague) affiliations to the corporate entities Vitelco and/or Innovative.[3]

The Complaint explains that "[t]his case involves the unlawful bailout by the Federal Government of CFC." Id. ¶ 7. "At issue is the USDA approval and guarantee of $2.5 Billion in bonds issued by CFC and purchased by the Federal Financing Bank[.]" Id. ¶ 8. The Complaint alleges a "subsidization scheme" involving CFC, several of its affiliated entities, and the Rural Telephone Finance Corporation. Id. ¶¶ 10-50. The Complaint alleges that, by mispricing loans it originated, CFC "wagered the continuity of its business on the continuation of the Subsidization Scheme." Id. ¶ 51, 52-55. CFC is allegedly "bankrupt on a Fair Value basis." Id. ¶ 55.

The Complaint alleges that "Farmer Mac and the USDA stepped into the breach" to save CFC by investing $1.34 and $2.5 billion in it, respectively, and that "[w]ithout the foregoing investments, CFC would have been forced to seek bankruptcy protection." Id. ¶ 66. The investments constituted "an unlawful bailout," id. ¶ 67, and did not "benefit[] rural electric and telephone utilities," id. ¶ 68.

The Complaint makes no specific allegations explaining how any actions of the USDA violated any legal standards. For example, the Complaint alleges that "the $3.8 Billion bailout is not enough and CFC remains bankrupt[.]" ¶ 95; see also id. ¶¶ 72-92 (nothing specific as to

---

[3] Accord id. ¶ 71; ¶ 106 ("The Farmer Mac funding and the USDA loan guarantees *have kept* the corrupt and incompetent management of CFC in place . . . and to engage in the retaliatory and extortionist course of conduct against Plaintiffs[.]" (emphasis added)). Any link to Plaintiffs from these unspecified actions must go through the two corporations with which Plaintiffs allege no present connection.

4

USDA); accord id. ¶ 71; ¶ 106 ("The Farmer Mac funding *and the USDA loan guarantees* have kept the corrupt and incompetent management of CFC in place . . . and to engage in the retaliatory and extortionist course of conduct against Plaintiffs[.]" (emphasis added).

With respect to the USDA, the Complaint seeks an injunction to "force compliance with the law" and a declaration that "USDA['s] guarantees of Bonds issued by [CFC] to the Federal Financing Bank Farmer [sic] are unlawful." Complaint at 27, ¶ 2.

### Legal Standards

**I.    Dismissal Pursuant to Rule 12(b)(1).**

A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) is generally treated like a Rule 12(b)(6) motion in that the facts alleged in the complaint are taken as true and viewed in the light most favorable to the plaintiff. See Ibrahim v. Titan Corp., 391 F. Supp. 2d 10, 13 (D.D.C. 2005) (Robertson, J.) (citing Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004)). However, the plaintiff has the burden of establishing jurisdiction. See Ibrahim (citing Macharia v. United States, 334 F.3d 61, 67-68 (D.C. Cir. 2003)). In addition, in order to resolve a Rule 12(b)(1) motion, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

**II.    Dismissal Pursuant to Rule 12(b)(6).**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from Conley v. Gibson, 355

U.S. 41, 47 (1957)); see also Aktieselskabet v. Fame Jeans, Inc., --- F.3d ---, 2008 WL 1932768 (D.C. Cir. Apr. 29, 2008); In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing Twombly). Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support plaintiff's claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. Twombly, 127 S. Ct. at 1965. Moreover, the Court need not "accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

As a general matter, the Court is not to consider matters outside the pleading, per Rule 12(b)(6), without converting defendant's motion to a motion for summary judgment. In interpreting the scope of this limitation, however, the D.C. Circuit has instructed that the Court may also consider "any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997).

For example, the D.C. Circuit recently instructed that court papers filed elsewhere by the plaintiff may be relied upon by the Court in deciding a motion to dismiss. See Jankovic v. Internat'l Crisis Group, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (citing Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1222-23 (D.C. Cir. 1993)); accord Covad Commun. Co. v. Bell Atlantic Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005) (judicial notice of other court

6

decisions and party's failure to respond to argument regarding them). Similarly, the D.C. Circuit approved judicial notice of public records on file at a government agency in <u>Kaempe v. Myers</u>, 367 F.3d 958, 965 (D.C. Cir. 2004) (patent assignment records on file with the Patent Trademark Office). <u>See also</u> <u>Trudeau v. FTC</u>, 456 F.3d 178, 183 (D.C. Cir. 2006) (press release and agency order attached to plaintiff's complaint); <u>In re Cheney</u>, 406 F.3d 723, 729 (D.C. Cir. 2005) (statements attached to complaint that undermined inference advocated by plaintiff).

## Argument

Plaintiffs have no legal basis to sue the USDA as "whistleblowers" against USDA actions they may dislike. Plaintiffs' numerous standing deficiencies are described below.

### I.     **Plaintiffs Lack Article III Standing.**

To have standing to sue, a plaintiff must demonstrate (1) actual or threatened injury, (2) that is traceable to the challenged action, and (3) which is redressable by court. <u>See, e.g.</u>, <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559-62 (1992); <u>Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.</u>, 454 U.S. 464 (1982); <u>Borg-Warner Protective Services Corp. v. EEOC</u>, 245 F.3d 831 (D.C. Cir. 2001).

Plaintiffs here fail to allege any of these elements, much less all of them. First, numerous missing links prevent them from showing actual or threatened injury. Most problematic are the facts that: (1) all harm or potential harm appears to funnel through two corporate entities--Vitelco and Innovative--neither of which are parties here, and (2) whatever ephemeral connections Plaintiffs may have had to Vitelco and Innovative are presented as events of the past. There is no present connection between Plaintiffs and any harm alleged in the Complaint.

Second, Plaintiffs fail the traceability requirement because, even if taken as true, the

allegations in the Complaint cannot support a finding that Vitelco, Innovative, or Plaintiffs would be better off in any way had the "unlawful bailout" not occurred. If anything, the Complaint suggests the opposite, that a collapse of CFC would harm Vitelco and/or Innovative.

Third, Plaintiffs' request for declaratory relief that the "bailout" was "unlawful" would do nothing to improve or repair any apparent interests of Plaintiffs. Plaintiff have faced two prior motions to dismiss, and nothing in their response thereto nor in their Complaint answers this basic defect in their pleading. Accordingly, Plaintiffs lack standing under Article III of the Constitution and their Complaint must be dismissed.

## II.     Plaintiffs Lack Prudential Standing.

In addition to the lack of Article III standing, Plaintiffs cannot show prudential standing, which requires generally that "they come within the zone of interests that Congress could reasonably have intended to protect." See, e.g., Southeastern Fed. Power Customers, Inc. v. Geren, 514 F.3d 1316, 1323 (D.C. Cir. 2008). Unlike Article III standing, which is based on the constitutional requirement of a "case or controversy," prudential standing derives from concerns for "prudent judicial administration." See Farmer Mac Mot. Dismiss at 24 (quoting AFGE v. Rumsfeld, 321 F.3d 139, 157 (D.C. Cir. 2003)). Hence, the requirement of prudential standing compares the interests plaintiffs seek to vindicate with the purpose of the statute they rely on. See, e.g., Role Models America, Inc. v. Geren, 514 F.3d 1308, 1311-12 (D.C. Cir. 2008).

Here, Plaintiffs rely on the statutory standards in the Farm Credit Act, see Complaint ¶ 73-75, and the Rural Economic Development Land and Grant ("REDLG") Act, see id. ¶ 85 (citing 7 U.S.C. § 904c-1). The Farm Credit Act explicitly aims to "improv[e] the income and well-being of American farmers and ranchers[.]" 12 U.S.C. § 2001. As for the REDLG program,

its statutory authority provides:

> Subject to subsection (b) of this section, the Secretary shall guarantee payments on bonds or notes issued by *cooperative or other lenders* organized on a not-for-profit basis if the proceeds of the bonds or notes are used to make loans for any electrification or telephone purpose eligible for assistance under this chapter, including section 904 or 922 of this title or to refinance bonds or notes issued for such purposes.

7 U.S.C. § 940c-1(a) (emphasis added). As amply demonstrated in the Complaint and in the dispositive motions filed by CFC and Farmer Mac, Plaintiffs are neither "farmers" nor "ranchers," nor are they "cooperative or other lenders." Their Complaint provides no factual basis to conclude that they would come within the zone of interests intended for protection by this governmental authority to guarantee certain loans. Therefore, Plaintiffs lack prudential standing and their Complaint should be dismissed for this reason as well.

### III.    *Pro Se* Plaintiffs May Not Sue on Behalf of their Corporation(s).

Plaintiffs appear here *pro se* and this creates an insoluble dilemma for them in light of the fact that their only discernable connections to the allegations in their Complaint all funnel through two corporate entities, Vitelco and Innovative. Even assuming *arguendo*, that these companies might have any cognizable interests here, they would be the real parties in interest to maintain the action, not Plaintiffs, under Rule 17(a) of the Federal Rules of Civil Procedure.

Moreover, in regulating the operation of federal courts, Congress enacted 28 U.S.C. § 1654, which requires that the parties appearing in federal courts "may appear and conduct their own cases personally or by counsel[.]" Controlling precedent interprets section 1654 uniformly to require that <u>corporations</u> be represented by licensed attorneys to appear in federal court. See <u>Rowland v. California Men's Colony</u>, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through

licensed counsel."); Bristol Petroleum Corp. v. Harris, 901 F.2d 165, 166 n.1 (D.C. Cir. 1990); Lennon v. McClory, 3 F. Supp. 2d 1461, 1462 n.1 (D.D.C. 1998).

Prosser's status as a *pro se* attorney does not change the fact that he himself is the party, not Vitelco nor Innovative. Therefore, neither he nor Raynor may appear on behalf of either Vitelco or Innovative. Because the Complaint gives no hint at all that Plaintiffs have any direct personal interest in the transactions described, except through these two companies, the Complaint should be dismissed.

### IV.  Plaintiffs' Bankruptcies Bar their Standing to Sue.

Even if all of the defects described above could be ignored or cured, the facts that (1) both Plaintiffs are in separate, individual bankruptcy proceedings, and (2) both have had trustees appointed to their respective estates, mean that only their respective trustees are authorized to bring civil actions regarding Plaintiffs' "legal or equitable interests . . . in property." See 11 U.S.C. §§ 323(a) & (b), 541(a)(1), & 704; see generally Nat'l Rural Mot. Dismiss at 26-30 and Exs. E, L, and N-Q attached thereto. Plaintiffs' respective bankruptcies may well explain the need for them to avoid seeking any relief in this case that would benefit their estates, but it further entrenches them in an insoluble dilemma with respect to their standing to sue: This suit cannot vindicate any cognizable interest of Plaintiffs without running afoul of the bankruptcy prohibitions. Conversely, if Plaintiffs somehow can manage to style their claims so as to avoid vindicating any personal interest of theirs, it confirms that they lack standing as explained above.

### V.  Plaintiffs' Complaint Fails to Allege Illegal Action by USDA.

To state a claim under the APA, a plaintiff must show either that the agency acted beyond its statutory authority by misinterpreting that authority or by acting in an arbitrary and capricious

manner by, for example, ignoring relevant materials in reaching its decision.  See 5 U.S.C. 706(2)(A) ("arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."); United States. v. Mead Corp., 533 U.S. 218, 231-32 (2001); Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984); see also Holly Sugar Corp. v. Johanns, 437 F.3d 1210, 1215 (D.C. Cir. 2006) (distinguishing between a challenge to the agency's interpretation of its legal authority and an arbitrary and capricious challenge, and citing Gen. Instrument Corp. v. FCC, 213 F.3d 724, 732 (D.C. Cir. 2000)).

A challenge to the agency's interpretation of its legal authority must overcome the deference the courts give to an agency's interpretation of its statutory authority, per Chevron.  An arbitrary and capricious claim cannot succeed if the agency's decision is "supported by substantial evidence, and [the agency] examined the relevant data and articulated a rational connection between the facts found and the choice made."  Western Area Power Admin. v. FERC, 525 F.3d 40, 51 (D.C. Cir. 2008).

In this case, the Complaint accuses the USDA of an "unlawful bailout" but does not explain which actions constituted the bailout or how any particular actions were illegal.  This is simply not a sufficient factual basis to raise the necessary inferences supporting a cause of action under the APA or any other statute, as required by the pleading standards of Twombly above.

Indeed, the few relevant allegations in the Complaint suggest to the contrary that the USDA acted within its statutory authority in approving the transactions at issue.  As with the standing arguments above, USDA joins the arguments for failure to state a claim made by both CFC and Farmer Mac in their respective motions, and incorporates them herein.  In the interest of judicial economy, USDA adds here only that, as Plaintiffs correctly identify, the REDLG

program requires by regulation, inter alia, (1) that the "bonds to be issued by the original lender [CFC] must receive an underlying investment grade rating from a Rating Agency, without regard to the guarantee [by the USDA]," see 7 C.F.R. § 1720.5(b)(2); (2) that audited financial statements of the guaranteed lender are received for the previous three years, see 7 C.F.R. § 1720.5(a)(5); and (3) "[t]he applicant's demonstrated performance of financially sound business practices," see 7 C.F.R. 1720.7(b)(3).  See Complaint ¶ 87.

Plaintiffs' Complaint concedes that CFC received an underlying investment grade rating on its guaranteed bonds from a rating agency as required by 7 C.F.R. § 1720.5(b)(2), see Complaint ¶ 87(ii), but asserts conclusorily that it was the result of "CFC's illegality and cozening," id.  This is insufficient to raise an inference of wrongdoing by USDA, per Twombly.

Moreover, Plaintiffs acknowledge that CFC financial audits were publicly available to RUS for the three years prior to the application for assistance.  See Complaint ¶ 38 (for the 1999-2001 audits), ¶ 41 (for the 2002 audit), ¶ 45 (CFC website to the 2000-2004 audits), ¶ 46 (for the 2005 audit) and ¶ 49 (for the 2005-2007 audits).  (USDA notes that despite charging impropriety on Deloitte's part, they have not joined Deloitte as a party to this litigation).  Plaintiffs' blanket statement that CFC's business practices were "unsound" is insufficient to support an inference of illegal action by the RUS in the face of, *inter alia*, the certified financial audits by the largest national auditing firms and the investment grade bond ratings for the bonds in question.  In the absense of any specific factual allegations, therefore, the only supportable conclusion is that RUS reasonably determined that CFC has demonstrated performance of financially sound business practices.  Taking the facts as laid out by Plaintiffs to be true, there can be no cause of action against the USDA, because the requirements of the REDLG program were met.  Therefore, even

if Plaintiffs had standing to bring this case, it would need to be dismissed for failure to state a claim.

## Conclusion

Plaintiffs' lack of standing is apparent for any of several independent reasons and they cannot demonstrate subject matter jurisdiction for their claims. Even if they could, however, their allegations simply do not support a inference of wrongdoing by USDA and their claims, therefore, are dismassable for failure to state a claim upon which relief may be granted.

June 27, 2008                                              Respectfully submitted,

 

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

 /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

 /s/
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov

# CERTIFICATE OF SERVICE

       I hereby certify that copies of the foregoing Department of Agriculture's Motion to Dismiss, supporting Memorandum, and proposed Order have been served by First-Class Mail, postage prepaid to:

JEFFREY J. PROSSER, *pro se*
P.O. Box 5227
St. Croix, VI 80823

JOHN P. RAYNOR, *pro se*
10110 Nicolas Street, Suite 102
Omaha, Nebraska 68114

Toby L. Gerber
FULBRIGHT & JAWORSKI, L.L.P.
2200 Ross Avenue
Suite 2800
Dallas, TX 75201

Gerard G. Pecht
FULBRIGHT & JAWORSKI
1301 McKinney Street
Suite 5100
Houston, TX 77010

on this 27th day of June, 2008.

                                                /s/
                                         ALAN BURCH, D.C. Bar # 470655
                                         Assistant United States Attorney
                                         555 4th St., N.W.
                                         Washington, D.C. 20530
                                         (202) 514-7204, alan.burch@usdoj.gov