**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JEFFREY J. PROSSER, *et al.*, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Civil Action No. 08-0687 (JR) |
| | : |
| FEDERAL AGRICULTURAL MORTGAGE | : |
| CORPORATION, *et al.*, | : |
| | : |
| Defendants. | : |

**MEMORANDUM**


The claim of *pro se* plaintiffs Jeffery Prosser and John

Raynor[1] against the Federal Agricultural Mortgage Corporation

(Farmer Mac) and the U.S. Department of Agriculture (USDA)is

essentially that their financial support of the National Rural

Utilities Cooperative Finance Corporation (CFC) is unlawful

because it keeps CFC afloat so that CFC is not forced through

financial necessity to do business with the plaintiffs and

accommodate their business needs.  CFC was originally named as a

defendant, but plaintiffs conceded its motion to dismiss.  Dkt.

14.  Farmer Mac and USDA now both move to dismiss for want of

subject matter jurisdiction.  Those motions will be granted

because, although the complaint is long on conspiracy theories

and painstaking (if unilluminating) detail, it is fatally short

---

[1]Although the complaint was filed *pro se*, Raynor is an
attorney.

on allegations of fact that would establish any of the required

three elements of plaintiffs' standing.[2]

### Background

On a motion to dismiss under Rule 12(b)(1), I must

consider the facts in the light most favorable to the plaintiff,

but I may appropriately give allegations of fact "closer

scrutiny" than under a Rule 12(b)(6) motion.  *See Macharia v.*

*United States*, 334 F.3d 61, 64, 69 (D.C. Cir.2003)*; Nat'l Ass'n*

*of Home Builders v. U.S. Army Corps of Engineers*, 539 F.Supp.2d

331, 337 (D.D.C. 2008).  I may also "look beyond the allegations

contained in the complaint."  *Jerome Stevens Pharm., Inc. v. Food*

*& Drug Admin.*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).

Defendant Farmer Mac is a public, federally chartered

corporation created to establish a secondary market for

agricultural real estate and rural housing mortgage loans and to

increase the availability of financing at stable interest rates

for American farmers and rural homeowners.  Cmpl. at 4, 9.  In

order to comply with its mandate and fund its operations, Farmer

Mac can issue debt and invest some of the capital it raises.  FM

MTD at 4-5.  Defendant USDA is a government agency which, among

other things, is authorized by the Rural Electrification Act of

1936, as amended (REDLG) § 313A to guarantee the repayment of

---

[2]This disposition under Rule 12(b)(1) makes it unnecessary
to address the alternative Rule 12(b)(6) ground of the
defendants' motion.

bonds issued by certain not-for-profit lenders if the proceeds of the bonds are used to make loans for electrification or telephone purposes.  USDA MTD at 2.

CFC is a private not-for-profit cooperative association which provides its members with financing to supplement the USDA's loan programs.  CFC MTD at 2.  Rural Telephone Finance Cooperative (RTFC), which has never been a party to this action, is a member of CFC and is also a private not-for-profit cooperative association which provides financing to its rural telecommunications members.  CFC MTD at 2-3.  CFC is the sole lender to RTFC and manages its affairs under a management agreement.  *Id.*

Prosser was the beneficial owner of Innovative Communication Corporation (ICC) and Virgin Islands Telephone Corporation (Vitelco).  Cmpl. at 23.  Raynor was a board member of those companies.  *Id.*  Vitelco was a member of RFTC and ICC was an associate member of RTFC.  Cmpl. at 23-24.

The complaint alleges -- and again, these allegations are taken as true for purposes of the pending motion -- that CFC uses RTFC as a "puppet" corporation; that, through a series of complicated maneuvers, it redirects RTFC's profits from loans made to the telecommunications sector to subsidize its electric sector members and to "cover up losses" on electric sector loans, Cmpl. at 5-6, Pl. USDA Opp. at 12-13; and that all this was

"obscured from the public by suspect accounting techniques."
Cmpl. at 8-15.

CFC (the complaint goes on to allege) is also bankrupt
or virtually bankrupt.  Cmpl. at 16.  Farmer Mac and the USDA
"bailed out" CFC by purchasing billions of dollars of its
securities for greater than their market value and guaranteeing
billions in loans to CFC made by the Federal Financing Bank,
respectively.  Cmpl. at 17-23.  Both the USDA and Farmer Mac knew
or should have known about CFC's improper use of RFTC's profits
and its dire financial straits because they were evident from
publicly filed documents.  *Id.*  The USDA and Farmer Mac ignored
these problems, in part because of "cronyism."  Cmpl. at 20-23.

ICC discovered CFC's use of RTFC's profits and
threatened to bring a "derivative suit" against RTFC.  Pl. FM
Opp. at 20-22.  In retaliation, RTFC foreclosed on an ICC loan.
*Id.*  RTFC had been financially damaged by CFC's practice of
taking RTFC's profits for its own use, but the "bailout" of CFC
by Farmer Mac and the USDA allowed CFC to fund RTFC's pursuit of
foreclosure without accommodating ICC's needs.  *Id.*  As a result
of the foreclosure litigation, ICC could not afford to and
stopped making payments on loans held by RTFC with the result
that ICC's parent companies and ICC itself went into bankruptcy,
and ICC fired the plaintiffs, *id.*

CFC's use of RFTC's profits and the "bailout" continue today, and without them CFC would not be financially viable.  *Id.* Prosser's recent attempts to conduct business with RFTC and CFC have been rebuffed.  Pl. USDA Opp. At 15.

The plaintiffs assert that Farmer Mac's purchase of CFC loans violated various statutory and regulatory provisions, and that the USDA's acts, although not "patently illegal," constituted unwise investments that were contrary to the spirit of REDLG and made because of cronyism.  PL. FM Opp. at 5-20; Pl USDA Opp. at 2.  The plaintiffs also assert that, by bailing out CFC, Farmer Mac and the USDA aided and abetted what they allege was CFC's fraudulent use of RFTC's profits and coverup of its financial difficulties.  Pl. FM Opp. at 17.

## Analysis

"Article III standing is a prerequisite to federal court jurisdiction, and . . . petitioners carry the burden of establishing their standing."  *Am. Library Ass'n v. F.C.C.*, 401 F.3d 489, 493 (D.C. Cir. 2005).  To establish standing, a plaintiff:

> First, must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.  Third, it must

be  likely,  as opposed to merely speculative, that the
injury will be redressed by a favorable decision.

*Id.*  Because these plaintiffs seek injunctive relief, they must
also allege that they are "likely to suffer future injury."  *City
of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

1. <u>Injury</u>

The injury plaintiffs allege "must affect [them] in a
personal and individual way.*"  Lujan v. Defenders of Wildlife*,
504 U.S. 555, 560 n. 1 (1992).  The assertion of a generalized
injury or of a right to force the government to act in accordance
with the law will not support standing, *Allen v. Wright*, 468 U.S.
737, 753-755 (1984), nor will merely complaining about the
expenditure of taxpayer dollars, *DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332, 343 (U.S. 2006).  Plaintiffs have no standing to
bring a case on behalf of third parties who are strangers to this
suit, such as ICC, Vitelco, the members of RTFC of CFC, or others
who may own securities issued by the companies that are the
subject of this suit.[3]  *See Power v. Ohio*, 499 U.S. 400, 410
(1991).

---

[3]Plaintiffs do not allege that they currently own any
investments in CFC, RTFC, ICC, Vitelco, or Farmer Mac, or any
securities issued by these companies or guaranteed by the USDA.
They do not allege that they have ever done business with Farmer
Mac or the USDA directly, or claim any present affiliation with
ICC or Vitelco, or any other member of RTFC or CFC.  Nor do they
satisfy the criteria for an exception to the general bar on third
party standing.  *Powers*, 499 U.S. at 411; *Renal Physicians Ass'n
v. U.S. Dept. of Health and Human Services,* 489 F.3d 1267, 1275-
1276 (D.C. Cir. 2007).

It is difficult to pin down the exact injuries, personal to them, of which these plaintiffs complain.[4]  They make generalized allegations of harm to their "business interests and reputation" and aver that they "will continue to suffer additional irreparable harm as long as management of [CFC] is retained because of the Farmer Mac and USDA unlawful funding" Compl. at 25, 26.  They do not have standing to bring claims for "hypothetical" or "conjectural" harms, *City of Los Angeles v. Lyons*, 461 U.S. at 103-104, but they provide no facts about the alleged "business interests" and they do not say how, or among whom, their reputations have been or will be injured.  They are more specific in their references to RTFC's past and continued rejection of an "offer" by Prosser that would "yield . . . RTFC and Greenlight $250 Million" and RFTC's general refusal to do business with Prosser, but there is no suggestion in the complaint or in their opposition to the pending motion that RTFC is under any obligation to deal with the plaintiffs.  Pl. USDA Opp. at 15.

2. <u>Causal Connection</u>

Plaintiffs did lose their jobs but not, as far as can be told from the record, for any reason traceable to the conduct of which they complain.  There is no allegation that the

---

[4]Plaintiffs' recitation of their future intent to file a Racketeer Influenced and Corrupt Organizations Act claim against CFC adds nothing to the analysis.

defendants control or controlled CFC or RTFC, and no claim or allegation that the defendants actually caused them direct injury at all.   Their factual proposition appears to be that if the USDA and Farmer Mac had not illegally "bailed out" CFC, (1) CFC and RTFC could not have foreclosed on ICC's loans or would have been forced to accommodate ICC by cutting a deal in the subsequent litigation, and that plaintiffs would therefore have kept their jobs or otherwise not been injured, and (2) CFC would now be forced to deal with, and/or abandon its "bellicose and openly hostile attitude" towards, Prosser.   Pl. FM Opp. at 20-23.

       The links in this chain of causality are all contingent on speculative assumptions about the past and future acts and motives of strangers to this suit, and even about market forces. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43 (1976). When "[m]ost, if not all, of the individual links in the chain [of causality] alleged by appellants depend on some allegation that cannot be easily described as true or false," such as when the "links inescapably presume certain independent action[s] of some third party not before" a court, the D.C. Circuit "routinely refuse[s] to permit such predictive assumptions to establish standing."   *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996).

3. Redressability

The plaintiffs provide no information as to how satisfaction of their demands would provide them with redress. "[T]o establish redressability at the pleading stage, [this Circuit] require[s] more than a bald allegation; [it] require[s] that the facts alleged be sufficient to demonstrate a substantial likelihood that the third party directly injuring the plaintiff would cease doing so as a result of the relief the plaintiff sought." *Renal Physicians Ass'n v. U.S. Dept. of Health and Human Services*, 489 F.3d 1267, 1275 (D.C. Cir. 2007).  The plaintiffs ask for declarations that the challenged acts are illegal and injunctive relief to prevent their continuation. Cmpl. at 27-28.  But declarations would not redress any supposed past harm, and the injunctive relief would at best merely give the plaintiffs a better chance at convincing RTFC to deal with them.  "[A] quest for ill-defined better odds is not close to what is required to satisfy the redressability prong of Article III." *Nat'l Wrestling Coaches Ass'n v. Dept. of Educ.*, 366 F.3d 930, 939 (D.C. cir. 2004).

## Conclusion

Plaintiffs have failed sufficiently to allege any of the required three elements of standing.  Without standing, there is no subject matter jurisdiction.  Without subject matter

jurisdiction, the complaint must be dismissed.  Fed R. Civ Pro.

12(b)(1).


                              JAMES ROBERTSON
                         United States District Judge